UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED,<br><br>             Plaintiff,<br><br>     v.<br><br>SOFTWARE TECH, et al.,<br><br>             Defendants. | Case No.  5:14-cv-02140-RMW<br><br>**ORDER SETTING EVIDENTIARY HEARING ON MOTION FOR CONTEMPT AND SANCTIONS**<br><br>Re: Dkt. No. 64 |

Plaintiff Adobe Systems Inc. ("Adobe") moves to hold defendants Pierre Francis, La Boutique du Softwaretech, Inc., Software Tech, Software Tech Store, and Futur-Soft Solutions Corporation (collectively, "defendants"), in contempt and liable for sanctions for defendants' violations of this court's Preliminary Injunction.  Dkt. No. 64 (Mot.); Dkt. No. 32 (Prelim. Inj.).  For the reasons explained below, the court finds that there are evidentiary disputes requiring a hearing before a finding of contempt or award of sanctions can be made.  Accordingly, the court sets an evidentiary hearing for September 18, 2015 at 1:30 p.m.

I.      BACKGROUND

Adobe makes various software products, including "ACROBAT®, ACROBAT CAPTURE®, ADOBE AUDITION®, ADOBE PREMIERE®, AFTER EFFECTS®, CONTRIBUTE®, CREATIVE SUITE®, CS LIVE®, DREAMWEAVER®, ENCORE®, FIREWORKS®, FLASH®, FLASH BUILDER®, FLASH CATALYST®, ILLUSTRATOR®,

1   INDESIGN®, LIGHTROOM®, PHOTOSHOP®, PRELUDE®, SPEEDGRADE®, and
2   VERSION CUE®." Dkt No. 54, FAC ¶ 25.  Defendants sell Adobe products through various
3   websites.  Dkt. No. 75-1 (Francis Decl.) ¶ 8.  Defendants' business model is such that:

> the majority of Software Tech's software sales are for a digital download. Whether given to a customer via digital download or physical media, a typical transaction between Software Tech and a customer involved the customer ordering software from the Software Tech website and downloading the software through the Software Tech website or receiving an installation disk via UPS, FedEx, etc. Software Tech purchased an activation key for the user from an approved first-tier or second-tier distributor, provided it to the customer, and the customer would then activate the software with Adobe using the activation key or serial numbers provided by Software Tech.

*Id.* ¶ 15.  Adobe alleges the defendants' sales violate Adobe licensing policies, which place various restrictions on how Adobe serial numbers are distributed to customers.  *See* Dkt. No. 64-3 (Draper Decl.).  In essence, Adobe alleges that defendants improperly re-use Adobe serial numbers, thereby selling the same software product multiple times.

### A.   The Prior Action and March 22, 2013 Permanent Injunction

Plaintiff previously brought an action against defendants Futur-Soft Solutions Corporation and Pierre Francis for similar conduct to that alleged here.  *See Adobe Systems Incorporated v. Matthew Rene, et al.*, Northern District of California Case No. 3:11-cv-03885-CRB (the "Prior Action").  The parties entered into a Confidential Settlement Agreement to resolve that matter, and the court entered a Permanent Injunction and Dismissal with Prejudice on March 22, 2013.  Dkt. No. 64-8.  The Permanent Injunction prohibits defendants Futur-Soft Solutions Corporation and Pierre Francis from:

> [§ 5.a] Infringing Plaintiff's Properties, either directly or contributorily, in any manner, including generally, but not limited to manufacturing, importing, distributing, advertising, selling and/or offering for sale any unauthorized product which features any of Plaintiff's Properties, including, but not limited to, any product sold outside specified channels or in a manner which violates the terms of Plaintiff's distribution agreements, including, but not necessarily limited to, academic, OEM, or foreign-made versions of Plaintiff's software (collectively "Unauthorized Products").

Dkt. No. 64-8 at 46.  Thus, the Permanent Injunction prohibits defendant Francis from dealing in

5:14-cv-02140-RMW
ORDER SETTING EVIDENTIARY HEARING ON MOTION FOR CONTEMPT AND SANCTIONS
2

"unauthorized" Adobe products. *Id.*

### B. This Action and October 9, 2014 Preliminary Injunction

Plaintiff filed the instant suit on May 9, 2014. On October 7, 2014 the parties stipulated to a Preliminary Injunction, which the court entered on October 9, 2014. Dkt. No. 32. The Preliminary Injunction prohibits defendants from:

> (a) importing, exporting, downloading, uploading, marketing, selling, offering for sale, distributing or dealing in any product or service that uses, or otherwise making any use of, any of Plaintiff's Trademarks or Copyrights . . .
>
> (b) importing, exporting, downloading, uploading, marketing, selling, offering for sale, distributing or dealing in any activation codes, keys, or serial numbers relating to any of Plaintiff's purported Trademarks or Copyrights . . .
>
> (c) importing, exporting, downloading, uploading, marketing, selling, offering for sale, distributing or dealing in any product or service that uses, or otherwise making any use of, any Original Equipment Manufacturer ("OEM"), educational or academic ("EDU"), government, foreign-made, Volume Licensing, or Adobe Employee Software Purchasing Program software, activation keys, code, or serial numbers relating to Plaintiff's Trademarks or Copyrights."

*Id.* § 1. The Preliminary Injunction is broader than the Permanent Injunction in that the Preliminary Injunction prohibits *all* sales of Adobe products, and not just "unauthorized" products.

### C. Alleged Violations of the Preliminary Injunction

Adobe uses investigators to purchase Adobe products from third parties and then checks to ensure the product has been properly licensed. Dkt. No. 64-3, Draper Decl. Adobe's investigator made several purchases of Adobe products from defendants' websites, including purchases after the entry of the Preliminary Injunction. *Id.* The sales Adobe uncovered violated the Preliminary Injunction and also violated Adobe's licensing policies. For example, Draper testifies that:

> I have analyzed the serial number contained in an email sent on December 23, 2014, from sales@thesoftwaretechstore.com to a customer. A true and correct copy of this email is attached to the Declaration of Haik Moushaghayan as Exhibit C. This serial number is for an unauthorized Educational Volume Licensed (TLP) version of Adobe Photoshop CS6. This serial number was not generated until August 28, 2014, and is not registered to the customer in the December 23, 2014, email. It has been activated a total of 15 times.

> None of the users have any business affiliation with each other.
> None of the users appear to be qualified as educational users.

*Id.* ¶ 13.

In addition, on February 7, 2015, Adobe's investigator made a purchase of an "Adobe Acrobat Professional 11 XI – Download Windows Master Key" from the website located at preloadmypc.com. Draper Decl. ¶ 19, Ex. Z. On February 11, 2015, Adobe received an email from defendants, through the email address sales@preloadmypc.com, providing a serial number for the investigator's purchase. *Id.* ¶ 19, Ex. AA. This serial number was for an unauthorized Volume Licensing (TLP) product sold outside of Adobe's licensing restrictions. *Id.* at ¶1 9.

## II.   LEGAL STANDARD

Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litigation,* 10 F.3d 693, 695 (9th Cir. 1993); *see also Gen. Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir. 1986) ("Civil contempt occurs when a party fails to comply with a court order."). "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the [nonmoving party] violated a specific and definite order of the court." *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City & County of San Francisco,* 968 F.2d 850, 856 n. 9 (9th Cir. 1992)). The contempt "need not be willful," and there is no good faith exception to the requirement to obey a court order. *In re Crystal Palace Gambling Hall, Inc.,* 817 F.2d 1361, 1365 (9th Cir. 1987).

"A district court ordinarily should not impose contempt sanctions solely on the basis of affidavits," especially where the parties submit opposing affidavits. *Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1324 (9th Cir. 1998), as amended on denial of reh'g and reh'g en banc (June 15, 1998) (citing *Hoffman et al. v. Beer Drivers & Salesmen's*, 536 F.2d 1268, 1276–77 (9th Cir. 1976)).

In this case, Adobe must prove by clear and convincing evidence that defendants violated the preliminary injunction by continuing to purchase or sell Adobe products after the court issued

its preliminary injunction.

## III. ANALYSIS

### A. The Request for Enforcement of the Permanent Injunction in the Prior Action Should Be Brought Before the Judge Who Issued that Injunction

Part of Adobe's motion is based on defendants' alleged violations of the permanent injunction entered in the Prior Action. *See, e.g.,* Mot. at 9.  If Adobe wishes to pursue a motion for contempt or sanctions against defendants for conduct occurring between March 22, 2013 (the date of entry of the Permanent Injunction in the Prior Action) and October 9, 2014 (the date of entry of the Preliminary Injunction in this matter), Adobe should pursue such a motion before Judge Breyer, absent an order relating the cases.  *See* Civil Local Rule 3-12.

### B. Adobe's Motion Is Timely Filed

Defendants first argue that Adobe's motion was not timely filed because Adobe discovered the violations of the Permanent and Preliminary Injunctions several months ago, but waited to file their current motion.  To the extent Adobe delayed in the filing the motion for violations of the Permanent Injunction, the court leaves that issue for Judge Breyer to resolve unless the cases have been related.  As to the Preliminary Injunction issued in the instant case, Adobe complied with Local Rule 7-8(c), which requires that a motion "must be made as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate."

First, Adobe attempted to meet and confer with defendants prior to filing the instant motion.  Reply at 12 (citing April 1, 2015 letter between counsel).  Second, Adobe was actively pursuing discovery to ascertain the full scope of defendants' violations of the Preliminary Injunction.  *Id.* (citing Drey Decl.).  Adobe did not receive its discovery responses until late April 2015, in connection with a Canadian litigation between the parties.  Drey Decl. ¶ 4.  Adobe filed this motion less than one month later, on May 15, 2015.  Dkt. No. 64.  Adobe did not unduly delay in bringing the motion for sanctions and, therefore, the court considers the motion on its merits.

### C. There are Issues of Fact Necessitating an Evidentiary Hearing

Although defendants acknowledge that the February 7, 2015 sale violated the Preliminary Injunction, defendants' argue that they should not be held in contempt and sanctioned because the sales of Adobe products "stemmed from a vast conspiracy of former employees of Software Tech to defraud defendants Pierre Francis and Software Tech out of hundreds of thousands, if not millions, of dollars." Dkt. No. 75 (Opp.) at 1.

Defendants rely on the declaration of Francis, who states that he "entrusted the day-to-day operations of the business to a key set of employees," who, it turns out, have "systematically defrauded [him] over a number of years." Francis Decl. ¶¶ 17, 20. Indeed, Francis has sued at least two of his now-former employees in Canadian court. *Id.* ¶ 22. Francis also states that the evidence Adobe relies upon in support of its motion (including depositions/declarations of former Software Tech employees, emails, and text messages) is false or was fraudulently created by the former employees. *See, e.g., id.* ¶ 42 ("The declaration of Mr. Moushaghayan in support of Adobe's Motion includes false information. In particular, the purported text message exchange between me and Mr. Moushaghayan is entirely fabricated."); *id.* ¶¶ 87-94.

Although there are certainly serious questions raised about the admissibility and credibility of defendants' evidence,[1] an evidentiary evidentiary hearing is necessary before the court can rule on the merits of the motion. *See Peterson*, 140 F.3d at 1324.

### IV. ORDER

For the reasons explained above, the court finds that an evidentiary hearing on the motion for contempt and sanctions in necessary. The court sets an evidentiary hearing for September 18, at 1:30 p.m., or some other mutually agreeable time cleared with the court's courtroom deputy, on the issue of whether defendants acted in contempt of the Preliminary Injunction (and the Permanent Injunction issued in the prior action if it is related) and whether sanctions should be

---

[1] Many of the objections filed by plaintiff to the declaration of Francis (Dkt. No. 76) are meritorious and will limit the evidence that may be admitted at the hearing and considered in ruling on plaintiff's application for an order of contempt and sanctions.

1  imposed and for what amount.

2  Defendants are ordered to strictly comply with the October 9, 2014 Preliminary Injunction

3  in its entirety pending the court's ruling on the motion for contempt and sanctions.

4  **IT IS SO ORDERED.**

6  Dated: August 19, 2015



Ronald M. Whyte
United States District Judge