UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>SOFTWARE TECH, et al.,<br><br>Defendants. | Case No. 5:14-cv-02140-RMW<br><br>**ORDER GRANTING MOTION FOR CONTEMPT AND SANCTIONS** |

Plaintiff Adobe Systems Inc. moves to hold defendants Pierre Francis, La Boutique du Softwaretech, Inc., Software Tech, Software Tech Store, and Futur-Soft Solutions Corporation (collectively, "defendants"), in contempt and liable for sanctions for defendants' violations of this court's Preliminary Injunction. Dkt. No. 64 (Mot.); Dkt. No. 32 (Prelim. Inj.). For the reasons explained below, the court GRANTS the motion for contempt and sanctions.

## I.   BACKGROUND

Adobe makes various software products, including "ACROBAT®, ACROBAT CAPTURE®, ADOBE AUDITION®, ADOBE PREMIERE®, AFTER EFFECTS®, CONTRIBUTE®, CREATIVE SUITE®, CS LIVE®, DREAMWEAVER®, ENCORE®, FIREWORKS®, FLASH®, FLASH BUILDER®, FLASH CATALYST®, ILLUSTRATOR®, INDESIGN®, LIGHTROOM®, PHOTOSHOP®, PRELUDE®, SPEEDGRADE®, and

1   VERSION CUE®." Dkt No. 54 (First Amended Complaint or "FAC") ¶ 25. Defendants sell

2   Adobe products through various websites. Dkt. No. 75-1 (Francis Decl.) ¶ 8. Defendants'

3   business model is such that:

> the majority of Software Tech's software sales are for a digital download. Whether given to a customer via digital download or physical media, a typical transaction between Software Tech and a customer involved the customer ordering software from the Software Tech website and downloading the software through the Software Tech website or receiving an installation disk via UPS, FedEx, etc. Software Tech purchased an activation key for the user from an approved first-tier or second-tier distributor, provided it to the customer, and the customer would then activate the software with Adobe using the activation key or serial numbers provided by Software Tech.

*Id.* ¶ 15. Adobe alleges the defendants' sales violate Adobe licensing policies, which place various restrictions on how Adobe serial numbers are distributed to customers. *See* Dkt. No. 64-3 (Draper Decl.). In essence, Adobe alleges that defendants improperly re-use Adobe serial numbers, thereby selling the same software product multiple times.

### A.  The Prior Action and March 22, 2013 Permanent Injunction

Plaintiff previously brought an action against defendants Futur-Soft Solutions Corporation and Pierre Francis for similar conduct to that alleged here. *See Adobe Systems Incorporated v. Matthew Rene, et al.*, Northern District of California Case No. 3:11-cv-03885-CRB (the "Prior Action"). The parties entered into a Confidential Settlement Agreement to resolve that matter, and the court entered a Permanent Injunction and Dismissal with Prejudice on March 22, 2013. Dkt. No. 64-8. The Permanent Injunction prohibits defendants Futur-Soft Solutions Corporation and Pierre Francis from:

> [§ 5.a] Infringing Plaintiff's Properties, either directly or contributorily, in any manner, including generally, but not limited to manufacturing, importing, distributing, advertising, selling and/or offering for sale any unauthorized product which features any of Plaintiff's Properties, including, but not limited to, any product sold outside specified channels or in a manner which violates the terms of Plaintiff's distribution agreements, including, but not necessarily limited to, academic, OEM, or foreign-made versions of Plaintiff's software (collectively "Unauthorized Products").

Dkt. No. 64-8 at 46. Thus, the Permanent Injunction prohibits defendant Francis from dealing in

"unauthorized" Adobe products. *Id.*

### B. This Action and October 9, 2014 Preliminary Injunction

Plaintiff filed the instant suit on May 9, 2014. On October 7, 2014 the parties stipulated to a Preliminary Injunction, which the court entered on October 9, 2014. Dkt. No. 32. The Preliminary Injunction prohibits defendants from:

> (a) importing, exporting, downloading, uploading, marketing, selling, offering for sale, distributing or dealing in any product or service that uses, or otherwise making any use of, any of Plaintiff's Trademarks or Copyrights . . .
>
> (b) importing, exporting, downloading, uploading, marketing, selling, offering for sale, distributing or dealing in any activation codes, keys, or serial numbers relating to any of Plaintiff's purported Trademarks or Copyrights . . .
>
> (c) importing, exporting, downloading, uploading, marketing, selling, offering for sale, distributing or dealing in any product or service that uses, or otherwise making any use of, any Original Equipment Manufacturer ("OEM"), educational or academic ("EDU"), government, foreign-made, Volume Licensing, or Adobe Employee Software Purchasing Program software, activation keys, code, or serial numbers relating to Plaintiff's Trademarks or Copyrights . . . .

*Id.* ¶ 1. The Preliminary Injunction is broader than the Permanent Injunction in that the Preliminary Injunction prohibits *all* sales of Adobe products, not just "unauthorized" products.

### C. Alleged Violations of the Preliminary Injunction

Adobe uses investigators to purchase Adobe products from third parties and then checks to ensure the product has been properly licensed. Dkt. No. 64-3. Adobe's investigator made several purchases of Adobe products from defendants' websites, including purchases after the entry of the Preliminary Injunction. *Id.* The sales Adobe uncovered violated the Preliminary Injunction and also violated Adobe's licensing policies. For example, Mr. Draper declares that:

> I have analyzed the serial number contained in an email sent on December 23, 2014, from sales@thesoftwaretechstore.com to a customer. A true and correct copy of this email is attached to the Declaration of Haik Moushaghayan as Exhibit C. This serial number is for an unauthorized Educational Volume Licensed (TLP) version of Adobe Photoshop CS6. This serial number was not generated until August 28, 2014, and is not registered to the customer in the December 23, 2014, email. It has been activated a total of 15 times.

3
5:14-cv-02140-RMW
ORDER GRANTING MOTION FOR CONTEMPT AND SANCTIONS
RS

> None of the users have any business affiliation with each other.
> None of the users appear to be qualified as educational users.

*Id.* ¶ 13.

In addition, on February 7, 2015, Adobe's investigator made a purchase of an "Adobe Acrobat Professional 11 XI – Download Windows Master Key" from the website located at preloadmypc.com. Draper Decl. ¶ 19, Ex. Z. On February 11, 2015, Adobe received an email from defendants, through the email address sales@preloadmypc.com, providing a serial number for the investigator's purchase. *Id.* ¶ 19, Ex. AA. This serial number was for an unauthorized Volume Licensing (TLP) product sold outside of Adobe's licensing restrictions. *Id.* at ¶ 19.

### D. Adobe's Motion for Contempt and Sanctions

Adobe filed its motion for contempt and for sanctions on May 15, 2015. Dkt. No. 64. Defendants filed an opposition on July 3, 2015, Dkt. No. 75, and Adobe filed a reply on July 17, 2015, Dkt. No. 77. The court held oral argument on the motion on July 31, 2015, Dkt. No. 81, and set an evidentiary hearing, Dkt. No. 84. The court held an evidentiary hearing on October 30, 2015 during which Adobe presented testimony from Michael Draper, Adobe's global manager of piracy investigations. Defendants failed to appear at the hearing even after the court rescheduled the hearing at the parties' request, *see* Dkt. No. 93.

## II. ANALYSIS

Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litigation,* 10 F.3d 693, 695 (9th Cir. 1993); *see also Gen. Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir. 1986) ("Civil contempt occurs when a party fails to comply with a court order."). "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the [nonmoving party] violated a specific and definite order of the court." *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City & County of San Francisco,* 968 F.2d 850, 856 n. 9 (9th Cir. 1992)). The contempt "need not be willful," and there is no good faith exception to the requirement to obey a court order. *In re Crystal Palace Gambling Hall, Inc.,* 817

F.2d 1361, 1365 (9th Cir. 1987).  Here, Adobe has the burden of proving by clear and convincing evidence that defendants violated the preliminary injunction by continuing to purchase or sell Adobe products after the court issued its preliminary injunction.

In support of its motion for contempt and for sanctions, Adobe submitted declarations from its global manager of piracy investigations and from several of defendants' former employees, as well as documentary evidence.  *See* Dkt. Nos. 64-1 – 64-6, 77-1 – 77-8.  In opposition, defendants submitted declarations from Pierre Francis, the sole officer of defendants Software Tech and Futur-Soft, as well as documentary evidence.  *See* Dkt. Nos. 75-1 – 75-14.  After reviewing the parties' submissions, the court found that although there were serious questions raised about the admissibility and credibility of defendants' evidence, an evidentiary hearing was necessary before the court could rule on the merits of the motion.  Dkt. No. 84 at 6.  As previously noted, the court held the evidentiary hearing on October 30, 2015.  Defendants failed to appear at the hearing, and the testimony of Adobe's witness Mr. Draper went unrebutted.  Defendants made no attempt to address the court's concerns with their evidence.  Based on the parties' written submissions and Mr. Draper's testimony, the court finds that Adobe has shown by clear and convincing evidence that defendants violated the Preliminary Injunction and that sanctions are appropriate.

### A.  Defendants Violated the Court's Preliminary Injunction

There is little to no dispute between the parties that defendants actually violated the terms of the Preliminary Injunction[1] by selling Adobe products.  *See* Dkt. No. 75 at 13.  Defendants' opposition brief admits that the February 7, 2015 sale violated the Preliminary Injunction:  "The Motion only specifically identifies a single instance of alleged contempt of any reliable authenticity."  *Id.*  The Preliminary Injunction explicitly states that Software Tech may not sell or distribute any "activation codes, keys, or serial numbers relating to any of Plaintiff's purported Trademarks or Copyrights."  Dkt. No. 32 § 1(b).  Defendants' excuse is that "[i]n the early stages

---

[1] This court previously held that Adobe's request for enforcement of the permanent injunction in the Prior Action should be brought before the judge who issued that injunction.  Dkt. No. 84 at 5.  Accordingly, this order does not address the permanent injunction.

of this case, [Francis's] understanding was that the Preliminary Injunction allowed [Francis], Software Tech, and related entities to sell the same types of Adobe software that were permitted under the Permanent Injunction." Francis Decl. ¶ 59. This was an unreasonable interpretation of the Preliminary Injunction, given the express language contained therein. *Id.* ¶ 61 ("I realize that my original understanding of the Preliminary Injunction was incorrect.").

Although defendants acknowledge that the February 7, 2015 sale violated the Preliminary Injunction, defendants' argue that they should not be held in contempt and sanctioned because the sales of Adobe products "stemmed from a vast conspiracy of former employees of Software Tech to defraud defendants Pierre Francis and Software Tech out of hundreds of thousands, if not millions, of dollars." Dkt. No. 75 at 1. Defendants rely on the declaration of Francis, who states that he "entrusted the day-to-day operations of the business to a key set of employees," who, it turns out, have "systematically defrauded [him] over a number of years." Dkt. No. 75-1 ¶¶ 17, 20. Francis claims that he has sued at least two of his now-former employees in Canadian court. *Id.* ¶ 22. Francis also states that the evidence Adobe relies upon in support of its motion (including depositions/declarations of former Software Tech employees, emails, and text messages) is false or was fraudulently created by the former employees. *See, e.g., id.* ¶ 42 ("The declaration of Mr. Moushaghayan in support of Adobe's Motion includes false information. In particular, the purported text message exchange between me and Mr. Moushaghayan is entirely fabricated."); *id.* ¶¶ 87-94.

Defendants' arguments that they should not be held in contempt are unpersuasive. First, there is no doubt that the corporate defendants, La Boutique du Softwaretech, Inc., Software Tech, Software Tech Store, and Futur-Soft Solutions Corporation, are liable for the Adobe sales as the sales were made from the corporations' websites. A corporation can only act through its employees, agents, directors or officers, and thus, corporations are responsible for the acts of those same persons. *S.E.C. v. Jenkins*, 718 F. Supp. 2d 1070, 1075 (D. Ariz. 2010) (citing *In re Am. Int'l Group, Inc.*, 965 A.2d 763, 802, 823 (Del. Ch. 2009)). In addition, Francis set up and controlled the bank accounts associated with the corporate websites. Dkt. No. 77-5 (Drey Decl.)

¶ 7 and Ex. OO (M. Verma Dep.).

Second, some of the unauthorized purchases at issue occurred *after* defendants fired the employees involved in the alleged conspiracy between November 2014 and January 2015. *See* Dkt. No. 77 at 6; Dkt. No. 75-1 (Francis Decl.) ¶¶ 36, 45, 50, 53, 56 & 57. At the October 30, 2015 hearing on the instant motion, Adobe presented unrebutted testimony that product serial numbers associated with defendants' sales were being used to activate Adobe software as late as October 28, 2015. Thus, defendants' protestation that the sales were the result of the conduct of rogue employees cannot account for all violations of the Preliminary Injunction.

Third, Francis's professed ignorance of the scheme is not persuasive. Defendants Futur-Soft Solutions and Francis have been on notice that they were selling Adobe products in violation of Adobe's licensing policies for over two years, since the filing of the Prior Action. Francis is "in charge of the big picture aspects of Software Tech, including handling large financial issues (e.g., paying bills, managing the bank accounts of the business, and paying employees, contractors, and service providers) and staffing decisions." Dkt. No. 75-1 ¶ 16. Nonetheless, Francis avers that "rogue employees deleted a substantial number of computerized business records for a period of at least a year and a half without [his] knowledge." *Id.* ¶ 32.[2] If Francis was admittedly responsible for "handling large financial issues" such as "paying bills," Francis should have discovered the "vast" fraud extending over a two-year period. Moreover, Francis engaged in the same improper behavior of which he accuses his employees, including shipping Adobe products to his home or homes of immediate family members and not to business addresses, "presumably in an effort to avoid Adobe's internal system from flagging too much product being sent to one person or company." Dkt. No. 77 at 8 (citing invoices from supplier Tiger Direct (Dkt. No. 77-8)).

In sum, the court finds that Adobe has shown by clear and convincing evidence that defendants violated the terms of the Preliminary Injunction. *Dual-Deck*, 10 F.3d at 695.

---

[2] The court strikes Adobe's separately filed evidentiary objections to the Francis declaration, Dkt. No. 76, per Local Rule 7-3(c) ("Any evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum.").

### B. Sanctions Are Appropriate

Civil contempt sanctions serve may serve two purposes: "to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (citing *United States v. United Mine Workers*, 330.U.S., 258, 303-04 (1947)). Adobe requests a monetary sanction in the form of actual damages, defendants' profits, treble damages, and/or statutory damages. Adobe also requests attorney's fees and costs in connection with this proceeding.

Defendants argue that because the rogue employees have been terminated, and Francis now understands the scope of the Preliminary Injunction, defendants will not violate the Preliminary Injunction going forward. Thus, defendants argue, there is no coercive purpose for sanctions. Dkt. No. 75 at 17. The court disagrees. As noted above, at the evidentiary hearing on this motion, Adobe presented unrebutted testimony and documentary evidence indicating that product serial numbers associated with defendants were being used to activate Adobe software as recently as October 28, 2015, months after the allegedly offending employees were fired. *See* Dkt. No. 98 (Hearing Exhibit A showing product activations). Thus, coercive sanctions may be appropriate in this case. Nevertheless, because Adobe's main argument at the hearing on this motion centered on compensation, the court turns to that basis for sanctions.

Defendants argue that sanctions would have no compensatory purpose because Adobe has not shown any actual loss from the improper sales. Adobe responds, and defendants do not dispute, that Adobe may be entitled to actual damages and profits or statutory damages pursuant to the Copyright Act and the Lanham Act. *See* 17 U.S.C. § 504; 15 U.S.C. § 1117; *BMG Music v. Perez*, 952 F.2d 318, 320 (9th Cir. 1991) (affirming contempt sanctions of $10,000 per violation of the preliminary injunction based on statutory damages for copyright infringement); *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1004 (9th Cir. 2004) (approving of disgorgement of profits as measure for contempt sanction in trademark action). Accordingly, the court finds that compensatory sanctions are appropriate in this case.

The court thus turns to the question of determining an appropriate amount for the sanctions. Here, Adobe presented unrebutted testimony from Mr. Draper, Adobe's global manager of piracy investigations. Adobe's manager testified that after this court issued the Preliminary Injunction on October 9, 2014, there have been 17,146 unauthorized activations of Adobe software products using license keys associated with defendants. Adobe's manager also submitted a report showing the product name, date, machine ID, serial number, and IP address associated with each of these activations. *See* Dkt. No. 98. The report listed 19 separate Adobe products and showed the retail value of each Adobe product involved in each product activation. *Id.* In total, Mr. Draper's report estimated that these unlicensed activations were worth $14,842,254. *Id.*

The court finds that the evidence Adobe has submitted to date is insufficient to support an award of actual damages. "Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) (quoting *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir.2003)). Even if the court were to accept the rather questionable assumption that, but for defendants' infringement, Adobe would have made 17,146 additional sales, Adobe still has presented evidence only of the gross revenue it lost, not of its lost profits. "In order to determine plaintiff's lost profits, it is necessary to deduct from the gross amount of lost sales whatever increase in costs (including overhead) plaintiff would have incurred if such lost sales had in fact been made." 5-14 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 14.02[A][1]. *See also Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 843 (9th Cir. 2014) (explaining trademark plaintiff's burden to submit evidence of deductible expenses necessary to calculate lost profits). Adobe presented no evidence of its costs or its profit margin.

Similarly, while courts have awarded contempt sanctions based on an infringer's profits, *see Jerry's Famous Deli*, 383 F.3d at 1004, Adobe apparently has not yet been able to obtain sales figures from defendants that would enable Adobe to calculate defendants' revenue from violations

1  of the Preliminary Injunction.[3]  *See* Dkt. No. 64 at 18.  Accordingly, on the present record, the

2  court has no evidence to support basing a sanction on infringer's profits.

3  As Adobe points out, a court may award sanctions based on statutory damages for

4  copyright infringement.  *See* Dkt. No. 77 at 14 (citing *BMG Music v. Perez*, 952 F.2d 318, 320

5  (9th Cir. 1991)).  In this case, the court finds it appropriate to grant a sanction based on statutory

6  damages.  The maximum amount of statutory damages available for willful copyright

7  infringement is $150,000 per infringed work.  *See* 17 U.S.C. § 504(c).  The court finds that Adobe

8  has shown that defendants willfully violated the Preliminary Injunction by continuing to sell

9  Adobe products without authorization.  As noted above, the report Adobe submitted during the

10 evidentiary hearing on this motion listed 19 separate Adobe products that defendants have sold

11 without authorization following entry of the Preliminary Injunction.  To compensate Adobe for its

12 losses, the court awards a sanction of $100,000 per infringed work, for a total of $1,900,000.

13 As Adobe has not presented evidence of costs or attorney's fees in connection with its

14 motion, the court declines to reach whether such a remedy would be appropriate at this time.

### III. ORDER

For the reasons explained above, the court GRANTS the motion for contempt and awards sanctions to Adobe in the amount of $1,900,000.

Within 10 days of the date of this order, defendants shall produce to plaintiff all documents: (1) related to or evidencing all of Defendants' PURCHASES of software from October 9, 2014, to the present bearing plaintiff's trademarks and containing plaintiff's copyrights provided in Exhibits "A" and "B" of the Preliminary Injunction; and (2) related to or evidencing all of defendants' SALES of software from October 9, 2014, to the present bearing plaintiff's trademarks and containing plaintiff's copyrights provided in Exhibits "A" and "B" of the Preliminary Injunction.

---

[3] If Adobe were able to present evidence of defendants' gross revenues due to infringement, the burden would then shift to defendants to show their deductible expenses.  *See* 17 U.S.C. § 504(b); 15 U.S.C. § 1117(a).

If plaintiff wishes to pursue sanctions based on actual damages or infringer's profits instead of sanctions based on statutory damages, and/or if plaintiff wishes to pursue attorney's fees and costs in connection with this proceeding, plaintiff shall file a brief not to exceed 5 pages, along with a supporting declaration and documentation, within 21 days of the date of this order. If defendants contest the amount requested, they may submit a response of no more than 3 pages within 14 days of Adobe's submittal of the requested information.

**IT IS SO ORDERED.**

Dated: November 10, 2015

_____
Ronald M. Whyte
United States District Judge