UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>SOFTWARE TECH, et al.,<br><br>Defendants. | Case No. 5:14-cv-02140-RMW<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. Nos. 105, 112 |

Before the court is a motion for default judgment filed by plaintiff Adobe Systems Inc. against defendant La Boutique Du Softwaretech, Inc., doing business as Software Tech and Software Tech Store ("Software Tech"); defendant Futur-Soft Solutions Corporation ("Futur-Soft"); and defendant Pierre Francis (collectively "defendants"). For the reasons set forth below, the court GRANTS plaintiff's motion for default judgment.

**I.   BACKGROUND**

Adobe makes various software products, including "ACROBAT®, ACROBAT CAPTURE®, ADOBE AUDITION®, ADOBE PREMIERE®, AFTER EFFECTS®, CONTRIBUTE®, CREATIVE SUITE®, CS LIVE®, DREAMWEAVER®, ENCORE®, FIREWORKS®, FLASH®, FLASH BUILDER®, FLASH CATALYST®, ILLUSTRATOR®, INDESIGN®, LIGHTROOM®, PHOTOSHOP®, PRELUDE®, SPEEDGRADE®, and

1   VERSION CUE®." Dkt No. 54 (First Amended Complaint or "FAC") ¶ 25. Defendants sell
2   Adobe products through various websites. Dkt. No. 75-1 (Francis Decl.) ¶ 8. Defendants' business
3   model is such that:

> the majority of Software Tech's software sales are for a digital download. Whether given to a customer via digital download or physical media, a typical transaction between Software Tech and a customer involved the customer ordering software from the Software Tech website and downloading the software through the Software Tech website or receiving an installation disk via UPS, FedEx, etc. Software Tech purchased an activation key for the user from an approved first-tier or second-tier distributor, provided it to the customer, and the customer would then activate the software with Adobe using the activation key or serial numbers provided by Software Tech.

*Id.* ¶ 15. Adobe alleges the defendants' sales violate Adobe licensing policies, which place various restrictions on how Adobe serial numbers are distributed to customers. *See* Dkt. No. 64-3 (Draper Decl.). In essence, Adobe alleges that defendants improperly re-use Adobe serial numbers, thereby selling the same software product multiple times.

### A.   The Prior Action and March 22, 2013 Permanent Injunction

Plaintiff previously brought an action against defendants Futur-Soft and Pierre Francis for similar conduct to that alleged here. *See Adobe Systems Incorporated v. Matthew Rene, et al.*, Northern District of California Case No. 3:11-cv-03885-CRB (the "Prior Action"). The parties entered into a Confidential Settlement Agreement to resolve that matter, and the court entered a Permanent Injunction and Dismissal with Prejudice on March 22, 2013. Dkt. No. 64-8. The Permanent Injunction prohibits defendants Futur-Soft and Pierre Francis from:

> [§ 5.a] Infringing Plaintiff's Properties, either directly or contributorily, in any manner, including generally, but not limited to manufacturing, importing, distributing, advertising, selling and/or offering for sale any unauthorized product which features any of Plaintiff's Properties, including, but not limited to, any product sold outside specified channels or in a manner which violates the terms of Plaintiff's distribution agreements, including, but not necessarily limited to, academic, OEM, or foreign-made versions of Plaintiff's software (collectively "Unauthorized Products").

Dkt. No. 64-8 at ECF p. 45. Thus, the Permanent Injunction prohibits defendant Francis from dealing in "unauthorized" Adobe products. *Id.*

### B. This Action and October 9, 2014 Preliminary Injunction

Plaintiff filed the instant suit on May 9, 2014. On October 7, 2014 the parties stipulated to a Preliminary Injunction, which the court entered on October 9, 2014. Dkt. No. 32. The Preliminary Injunction prohibits defendants from:

> (a) importing, exporting, downloading, uploading, marketing, selling, offering for sale, distributing or dealing in any product or service that uses, or otherwise making any use of, any of Plaintiff's Trademarks or Copyrights . . .
>
> (b) importing, exporting, downloading, uploading, marketing, selling, offering for sale, distributing or dealing in any activation codes, keys, or serial numbers relating to any of Plaintiff's purported Trademarks or Copyrights . . .
>
> (c) importing, exporting, downloading, uploading, marketing, selling, offering for sale, distributing or dealing in any product or service that uses, or otherwise making any use of, any Original Equipment Manufacturer ("OEM"), educational or academic ("EDU"), government, foreign-made, Volume Licensing, or Adobe Employee Software Purchasing Program software, activation keys, code, or serial numbers relating to Plaintiff's Trademarks or Copyrights . . . .

*Id.* ¶ 1. The Preliminary Injunction is broader than the Permanent Injunction in that the Preliminary Injunction prohibits *all* sales of Adobe products, not just "unauthorized" products.

### C. Violations of Preliminary Injunction and Order Awarding Sanctions

Adobe uses investigators to purchase Adobe products from third parties and then checks to ensure the product has been properly licensed. Dkt. No. 64-3. Adobe's investigator made several purchases of Adobe products from defendants' websites, including purchases after the entry of the Preliminary Injunction. *Id.* The sales Adobe uncovered violated the Preliminary Injunction and also violated Adobe's licensing policies. For example, Mr. Draper declares that:

> I have analyzed the serial number contained in an email sent on December 23, 2014, from sales@thesoftwaretechstore.com to a customer. A true and correct copy of this email is attached to the Declaration of Haik Moushaghayan as Exhibit C. This serial number is for an unauthorized Educational Volume Licensed (TLP) version of Adobe Photoshop CS6. This serial number was not generated until August 28, 2014, and is not registered to the customer in the December 23, 2014, email. It has been activated a total of 15 times. None of the users have any business affiliation with each other. None of the users appear to be qualified as educational users.

*Id.* ¶ 13.

In addition, on February 7, 2015, Adobe's investigator made a purchase of an "Adobe Acrobat Professional 11 XI – Download Windows Master Key" from the website located at preloadmypc.com. Draper Decl. ¶ 19, Ex. Z. On February 11, 2015, Adobe received an email from defendants, through the email address sales@preloadmypc.com, providing a serial number for the investigator's purchase. *Id.* ¶ 19, Ex. AA. This serial number was for an unauthorized Volume Licensing (TLP) product sold outside of Adobe's licensing restrictions. *Id.* at ¶ 19.

In an order dated November 10, 2015, this court found that defendants had violated the preliminary injunction, and the court awarded Adobe $1,900,000 in sanctions. Dkt. No. 99 at 10. In calculating this amount, the court reasoned that defendants had unlawfully distributed license keys that were used in over 17,000 activations of 19 different copyrighted Adobe software programs. *Id.* The court's award was based on $100,000 in statutory copyright damages for each of the 19 infringed works.

### D.      Motion for Default Judgment

On November 10, 2015, this court found defendants Software Tech and Futur-Soft in default because their counsel withdrew, and corporations cannot represent themselves without an attorney in federal court. Dkt. No. 100. On February 26, 2016, this court adopted the assigned magistrate judge's recommendation found defendant Francis in default for his continued failure to schedule, participate in, or produce employee witnesses for deposition. Dkt. No. 109.

Plaintiff filed the instant motion for default judgment against all defendants on January 11, 2016. Dkt. No. 105. In addition to the $1,900,000 already awarded, plaintiff seeks: (1) an additional $200,000 in copyright statutory damages for works that were allegedly distributed before this court entered a preliminary injunction; (2) $4,400,000 in trademark statutory damages; and (3) a permanent injunction. Defendants did not file an opposition. On February 26, 2016, this court requested supplemental briefing on whether an award of statutory damages for both copyright and trademark infringement would constitute an impermissible double recovery. Dkt. No. 110. The court also requested additional factual support for plaintiff's damages claims. On

March 11, 2016, plaintiff filed a supplemental brief as well as a declaration from Mr. Draper and documentation regarding the amount of profit Adobe would have expected to make on the infringing sales. Dkt. Nos. 112, 111-3.

## II.     ANALYSIS

### A.     Whether Default Judgment is Appropriate

After entry of default, courts may, in their discretion, enter default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion to enter default judgment, the court may consider:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

#### 1.     Possibility of Prejudice to Plaintiff

The court recognizes the possibility that plaintiff will be prejudiced if default judgment is not entered against defendant. Denying judgment against a defendant who does not participate in litigation leaves the plaintiff with limited recourse for recovery, such as filing a time-intensive motion for summary judgment. *See Atain Specialty Ins. Co. v. N. Bay Waterproofing, Inc.*, No. 14-CV-04056-RMW, 2015 WL 428161, at *4 (N.D. Cal. Jan. 30, 2015). Thus, the first factor weighs in favor of granting default judgment.

#### 2.     Substantive Merits and the Sufficiency of the Complaint

The next two *Eitel* factors, the substantive merits of plaintiff's claim and the sufficiency of the complaint, require that plaintiff's allegations "state a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

5
5:14-cv-02140-RMW
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
RS

### a. Copyright Claims

"To establish copyright infringement, a plaintiff must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). A certificate of registration is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Here, plaintiff has alleged its ownership in 21 registered, copyrighted works. FAC ¶ 30. A certificate of registration is prima facie evidence of the validity of the copyright. Moreover, plaintiff has alleged and submitted evidence that defendants distributed unauthorized copies of plaintiff's copyrighted works. FAC ¶¶ 44, 46, 58; Dkt. No. 112-1. These allegations are sufficient to establish copyright infringement.

### b. Trademark Claims

To state a claim for trademark infringement, a plaintiff must allege that (1) it has a valid, protectable trademark, and (2) that defendants' use of the mark in commerce is likely to cause confusion. *See* 15 U.S.C. § 1114(1)(a); *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). The claim for false designation of origin or unfair competition has the same elements and follows an identical analysis in this case.[1] *See* 15 U.S.C. § 1125(a); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 n.8 (9th Cir. 1999). To constitute trademark infringement, use of a mark must be likely to confuse an "appreciable number" of "reasonably prudent" consumers. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002). In assessing likelihood of confusion, courts consider:

> 1. The strength of the plaintiff's trademark;
> 2. The similarity of the marks;
> 3. The proximity or relatedness of the goods or services;
> 4. The defendants' intent in selecting the marks;
> 5. Evidence of actual confusion;
> 6. The marketing channels used;
> 7. The likelihood of expansion of product lines; and,
> 8. The degree of care consumers are likely to exercise.

---

[1] Plaintiff's state law claims are predicated on defendants' alleged infringement of plaintiff's trademarks and copyrights. *See* FAC ¶¶ 98-116.

1  *Id.* at 1140 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)).

2  "Although some factors—such as the similarity of the marks and whether the two companies are

3  direct competitors—will always be important, it is often possible to reach a conclusion with

4  respect to likelihood of confusion after considering only a subset of the factors." *Brookfield*, 174

5  F.3d at 1054.

6      Here, plaintiff has stated a claim for trademark infringement. Plaintiff has alleged

7  ownership of 22 registered trademarks. FAC ¶ 29. Moreover, plaintiff has alleged that defendants

8  used plaintiff's marks in commerce by distributing software bearing plaintiff's marks without

9  authorization. FAC ¶¶ 43-60. Plaintiff has also adequately alleged a likelihood of confusion.

10  While plaintiff's allegations are not mark-specific, plaintiff has alleged that its marks "have been

11  prominently placed in the minds of the public" as a result of "Plaintiff's efforts, the quality of

12  Plaintiff's products, and the promotion and word of mouth buzz." FAC ¶ 27. Moreover,

13  defendants' accused products are copies of Adobe products, with identical marks, placed in direct

14  competition with authorized Adobe software. *See id.* ¶¶ 43-60. "A party claiming trademark

15  infringement need not demonstrate that the alleged infringer intended to deceive consumers," *M2

16  Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1085 (9th Cir. 2005), but here, defendants' intent

17  may be inferred from the fact that defendants knowingly used marks identical to those of plaintiff.

18  Plaintiff also submitted evidence that some of defendants' customers were confused into thinking

19  that they had purchased authorized Adobe software. Dkt. No. 64-6 Ex. A & F. The court need not

20  address the remaining *Sleekcraft* factors to conclude that plaintiff has adequately established

21  likelihood of confusion, at least as to some of plaintiff's marks.

22      For the reasons stated above, plaintiff has adequately established trademark infringement.

### c. Trademark Dilution Claims

24      To state a claim for trademark dilution, a plaintiff must allege that "(1) the mark is famous

25  and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use

26  began after the mark became famous; and (4) the defendant's use of the mark is likely to cause

27  dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634

(9th Cir. 2007) (citing 15 U.S.C. § 1125(c)).

Plaintiff has adequately established trademark dilution. Plaintiff has alleged that Adobe-Branded Software and the associated marks thereto are famous in the United States and throughout the world. FAC ¶ 27. "Registration alone may be sufficient in an appropriate case to satisfy a determination of distinctiveness." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1199 (9th Cir. 2009). As noted above, plaintiff has alleged that defendants used plaintiff's marks in commerce by distributing software bearing plaintiff's marks without authorization. FAC ¶¶ 43-60. Plaintiff has alleged that defendants' use of the marks began after the marks became famous. *Id.* ¶ 61. Plaintiff has also submitted evidence that defendants have tarnished Adobe's marks by selling unauthorized Adobe software that will not work. Dkt. No. 64-6 Ex. A & F.

### 3. Sum of Money at Stake

In analyzing the fourth *Eitel* factor, the sum of money at stake, "the court considers [the] plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-03594 JSW, 2007 WL 1545173, at * 12 (N.D.Cal. May 29, 2007). Default judgment is disfavored when a large sum of money is involved or the damages sought are unreasonable in light of the defendant's actions. *See id.* Where a plaintiff's request for damages is excessive, the court may mitigate the impact of this factor by reducing the amount awarded. *See, e.g., Joe Hand Promotions, Inc. v. Burleson*, No. 11–00499, 2011 WL 4905631, at *4 (E.D. Cal. Oct. 14, 2011). Here, the court finds plaintiff's request for $4,600,000 in statutory damages in addition to the $1,900,000 already awarded unreasonable in light of the circumstances of the case. However, because, as discussed below, the court awards plaintiff a smaller sum, this factor does not weigh strongly against the entry of default judgment.

### 4. Remaining Factors

The remaining *Eitel* factors also support default judgment. There is no genuine issue of material fact because the allegations in the complaint are taken as true. Moreover, there is no evidence that defendant's failure to participate in the litigation is due to excusable neglect. Finally,

although the policy favoring decisions on the merits weighs against entering default judgments, that policy alone is not enough to prevent the entry of judgment here.

* * *

On balance, the court finds that the seven *Eitel* factors favor default judgment.

**B.     Damages**

As noted above, in addition to the $1,900,000 already awarded, plaintiff seeks: (1) $100,000 in copyright statutory damages for each of two works that were distributed before this court entered a preliminary injunction, a total of $200,000 in additional copyright damages; and (2) $200,000 in trademark statutory damages for each of 22 infringed marks, a total of $4,400,000 in additional trademark damages. Alternatively, plaintiff requests $24,966,618.70 in lost profits based on an alleged 53,731 activations of Adobe software. Dkt. No. 112 at 4.

The court finds that plaintiff's request for lost profits is not adequately supported. In support of its claim, plaintiff submitted a list of products that defendants distributed without authorization, including the number of units distributed, the retail price of each product, and Adobe's purported profit margin on each product. Dkt. No. 111-3. A fatal flaw with plaintiff's evidence is that it assumes, without any support, that but for defendants' infringement, Adobe would have sold 53,371 additional software units at full retail price. However, plaintiff's complaint accuses defendants of, among other things, selling unauthorized academic and "Transactional Licensing Program" editions of Adobe software, which, the complaint explains, are offered at steep discounts. FAC ¶¶ 32, 33, 37. At least because the price and profit figures filed by plaintiff do not distinguish between retail and discounted licenses, the court finds them unreliable for calculating lost profits. Thus, the court turns to statutory damages.

A "district court has 'wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima'" of the relevant statutes. *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) (quoting *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984)). Under the Copyright Act, a court, in its discretion, can award between $750 and $30,000 in statutory damages per copyright

infringed. 17 U.S.C. § 504(c)(1). Enhanced damages of up to $150,000 per copyright infringed may be granted on a finding of willful infringement. *Id.* § 504(c)(2). For trademark infringement involving the use of a counterfeit mark, a plaintiff may recover statutory damages between $1,000 and $200,000 per infringed mark, "as the court considers just." 15 U.S.C. 1117(c). A court may also award enhanced damages of up to $2,000,000 per counterfeit mark on a finding of willful infringement, again, "as the court considers just." *Id.*

After plaintiff filed its initial motion for a default judgment, this court requested supplemental briefing on whether an award of statutory damages for both copyright and trademark infringement would constitute an impermissible double recovery. In response, plaintiff cited *Nintendo of America, Inc. v. Dragon Pacific International*, 40 F.3d 1007, 1011 (9th Cir.1994) for the proposition that "when a defendant violates both the Copyright Act and the Lanham Act, an award of both types of damages is appropriate." In *Nintendo*, the court awarded statutory damages under copyright law in conjunction with an award of actual damages under trademark law. While *Nintendo* did not explicitly hold that courts can award statutory damages under both copyright and trademark law for the same underlying acts, plaintiff cites several district courts cases allowing separate statutory damages awards under copyright and trademark law. Dkt. No. 112 at 2-3.

None of the cases plaintiff has cited supports the award of the $4,600,000 that plaintiff seeks (in addition to the $1,900,000 already awarded) as a default judgment. *See Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008) (awarding "$100,000 for each of seven trademarks infringed and $30,000 for each of nine copyrights infringed, for a combined total of $970,000"); *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501-02 (C.D. Cal. 2003) (awarding $2,000,000 in trademark statutory damages for the importation of "8,000,000 counterfeit cigarettes, having a street value of millions of dollars"); *Tiffany Inc. v. Luban*, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003) (awarding $550,000 in trademark statutory damages for sale of "28 separate counterfeit Tiffany items . . . each of which allegedly infringes upon at least four Tiffany trademarks"); *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) (awarding "$100,000 for each of five trademarks at issue and $30,000 for [each of] seven

1  copyrights at issue, for a total of $710,000"); *Microsoft Corp. v. Sellers*, 411 F. Supp. 2d 913, 921-
2  22 (E.D. Tenn. 2006) (awarding "$100,000 for each of [the] four trademarks at issue and $30,000
3  for [the] two copyrights at issue, for a total of $460,000"). In *Microsoft Corp. v. Ricketts*, No.
4  C06-06712 WHA, 2007 WL 1520965, at *5 (N.D. Cal. May 24, 2007), also cited by plaintiff, the
5  court awarded "statutory damages in the amount of $1500 per copyright infringed and $1000 per
6  trademark infringed, for a total of $12,500." Judge Alsup specifically noted: "It is true that
7  Microsoft could not conduct discovery to determine its damages, but that in itself simply does not
8  support levying a statutory damages award in excess of three million dollars." *Id.*

In the instant case, the court finds that the $4,600,000 plaintiff seeks would constitute an improper windfall to plaintiff. With respect to plaintiff's copyright claims, consistent with this court's order awarding sanctions, the court will award $100,000 in copyright statutory damages per infringed work, for a total of $200,000. With respect to plaintiff's trademark claims, the court notes that plaintiff only cited evidence of actual of confusion as to two of its marks. Dkt. No. 64-6 Ex. A & F (correspondence with consumers reflecting activation issues with purchases from defendants of Adobe Photoshop CS6 and Adobe CS5.5 Production Premium). Moreover, the complaint's allegations of likelihood of confusion were not specific to particular marks. Accordingly, the court thinks it just to award $100,000 in trademark statutory damages for each of the two infringed marks for which plaintiff showed actual confusion. Thus, in total, the court awards $400,000 in statutory damages for defendants' copyright and trademark infringement, in addition to the $1,900,000 already awarded in sanctions. These damages, coupled with the permanent injunction granted against defendant, will adequately serve the purpose of deterrence.

### C.   Permanent Injunction

Under 17 U.S.C. § 502(a), a court may enter an injunction against a defendant to prevent future copyright infringement. Similarly, injunctive relief is available to prevent future trademark infringement under the Lanham Act. 15 U.S.C. § 1116(a); 15 U.S.C. § 1125(c). Here, defendants have repeatedly infringed plaintiff's copyrights and trademarks despite prior orders issued against them. Plaintiff will suffer irreparable injury if ongoing infringement is not enjoined. Furthermore,

defendants' refusal to participate in this action makes it difficult for plaintiff to prevent further infringement. The court is unaware of any reason why an injunction would impose an undue hardship on defendants or harm the public interest. Accordingly, injunctive relief is warranted. Plaintiff's motion for a permanent injunction is granted as described below.

### III.     ORDER

For the foregoing reasons, plaintiff's motion for default judgment is GRANTED. Plaintiff is awarded $400,000 in statutory damages, in addition to the $1,900,000 already awarded in sanctions, for a total of $2,300,000. Plaintiff's request for a permanent injunction is GRANTED on the following terms:

Defendants and any person or entity acting in concert with, or at its direction, including any and all officers, directors, agents, servants, employees, and any others over which it may exercise control, are hereby restrained and enjoined from engaging in, directly or indirectly, or authorizing or assisting any third party to engage in, any of the following activities:

1. importing, exporting, downloading, uploading, marketing, selling, offering for sale, distributing or dealing in any product or service that uses, or otherwise making any use of, any of Plaintiff's Trademarks or Copyrights, including but not limited to the ADOBE®, ACROBAT®, ACROBAT CAPTURE®, ADOBE AUDITION®, ADOBE PREMIERE®, AFTER EFFECTS®, CONTRIBUTE®, CREATIVE SUITE®, CS LIVE®, DREAMWEAVER®, ENCORE®, FIREWORKS®, FLASH®, FLASH BUILDER®, FLASH CATALYST®, ILLUSTRATOR®, INDESIGN®, LIGHTROOM®, PHOTOSHOP®, PRELUDE®, SPEEDGRADE®, and VERSION CUE® marks and works, and/or any Intellectual Property that is confusingly or substantially similar to, or that constitutes a colorable imitation of, any of Plaintiff's Trademarks and Copyrights, whether such use is as, on, in or in connection with any trademark, service mark, trade name, logo, design, Internet use, website, domain name, meta tags, advertising, promotions, solicitations, commercial exploitation, television, web-based or any other program, or any product or service, or otherwise. A list of Plaintiff's registered trademarks is attached and incorporated by reference herein as Exhibit A (collectively referred to as "Plaintiff's Trademarks"). A list of

1   Plaintiff's registered copyrights is attached and incorporated herein as Exhibit B (collectively

2   referred to as "Plaintiff's Copyrights");

3       2. importing, exporting, downloading, uploading, marketing, selling, offering for sale,

4   distributing or dealing in any activation codes, keys, or serial numbers relating to any of Plaintiff's

5   purported Trademarks or Copyrights and/or any Intellectual Property that is confusingly or

6   substantially similar to, or that constitutes a colorable imitation of, any of Plaintiff's Trademarks

7   or Copyrights;

8       3. importing, exporting, downloading, uploading, marketing, selling, offering for sale,

9   distributing or dealing in any product or service that uses, or otherwise making any use of, any

10  Original Equipment Manufacturer ("OEM"), educational or academic ("EDU"), government,

11  foreign-made, Volume Licensing, or Adobe Employee Software Purchasing Program software,

12  activation keys, code, or serial numbers relating to Plaintiff's Trademarks or Copyrights;

13      4. maintaining active for downloading purposes any servers, computer terminals and/or

14  portals, or any electronic storage medium containing any of Plaintiff's Trademarks and Copyrights

15  and/or any Intellectual Property that is confusingly or substantially similar to, or that constitutes a

16  colorable imitation of, any of Plaintiff's Trademarks or Copyrights;

17      5. performing or allowing others employed by or representing them, or under their control,

18  to perform any act or thing which is likely to injure Plaintiff, any of Plaintiff's Trademarks or

19  Copyrights and/or Plaintiff's business reputation or goodwill, including making disparaging,

20  negative, or critical comments regarding Plaintiff or its products;

21      6. engaging in any conduct that falsely represents that, or is likely to confuse, mislead, or

22  deceive purchasers, customers, or members of the public to believe that Defendants itself is

23  connected with, is in some way sponsored by or affiliated with, purchases products from, or

24  otherwise has a business relationship with Plaintiff;

25      7. hiding, disposing of, destroying, moving, relocating, or transferring any and all products,

26  advertising, promotional materials, or packaging bearing and/or comprised of any of Plaintiff's

27  Trademarks or Copyrights and/or any Intellectual Property that is confusingly or substantially

28

similar to, or that constitutes a colorable imitation of, any of Plaintiff's Trademarks or Copyrights;

8. hiding, disposing of, destroying, moving, relocating, or transferring any and all business records, specifically including any accountings, sales and supply logs, customer journals, ledgers, invoices, and purchase orders, concerning Defendants' import, export, download, upload, marketing, sale, offer for sale, distribution or dealing in any product or service that uses, or otherwise making any use of, any of Plaintiff's Trademarks or Copyrights and/or any Intellectual Property that is confusingly or substantially similar to, or that constitutes a colorable imitation of, any of Plaintiff's Trademarks or Copyrights;

9. hiding, disposing of, destroying, moving, relocating, or transferring any and all computers, tablets, servers, blade, electronic storage devices, data, meta data, electronic storage media, disks, CDs, DVDs, drives, flash drives, hard drives, or related computer systems that include, denote, contain, possess, maintain and/or are used to transfer any software, computer source code, computer information, decrypted code, directories, files, libraries, and any related data that relate (either directly or indirectly) to Plaintiff's Trademarks or Copyrights; and

10. using any Internet domain name that includes any of Plaintiff's Trademarks or Copyrights.

Defendants shall be restrained and enjoined from transferring or disposing of any money or other tangible assets of Defendants unless further ordered by this court.

**IT IS SO ORDERED.**

Dated: September 8, 2016

_Ronald M. Whyte_
Ronald M. Whyte
United States District Judge